UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LAURENT DORIVERT,

Petitioner,

v.                                                Case No: 6:15-cv-2195-Orl-28DCI

SECRETARY, DEPARTMENT OF
CORRECTIONS and ATTORNEY
GENERAL, STATE OF FLORIDA,

Respondents.
_____/

## ORDER

This case is before the Court on Petitioner Laurent Dorivert's Petition for Writ of Habeas Corpus ("Petition," Doc. 1) pursuant to 28 U.S.C. § 2254. Petitioner challenges his conviction for the murder of his wife, which occurred in their residence. Respondents filed a Response to the Petition ("Response," Doc. 12) in accordance with this Court's instructions. Petitioner filed a Reply to the Response ("Reply," Doc. 18).

Petitioner asserts seven grounds for relief. For the following reasons, the Petition must be denied.

### I. Procedural History

Petitioner was charged with first degree murder (Doc. 13-1 at 38), and a jury found him guilty as charged. (Doc. 13-2 at 22). The trial court sentenced Petitioner to life in prison. (Doc.13-2 at 53). Petitioner appealed, and the Fifth District Court of Appeal of Florida ("Fifth DCA") affirmed. (Doc. 13-5 at 106-07).

After losing on direct appeal, Petitioner filed a motion for DNA testing pursuant to Rule 3.853 of the Florida Rules of Criminal Procedure. (Doc. 13-5 at 110-20). The state court denied

the motion. (Doc. 13-6 at 43-46). Petitioner appealed, and the Fifth DCA affirmed *per curiam.* (Doc. 13-7 at 72).

Petitioner then filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Doc. 13-8 at 2-15), and the state court denied that motion. (*Id.* at 66-70). Petitioner appealed, and the Fifth DCA affirmed *per curiam.* (*Id.* at 180). Petitioner now seeks habeas corpus relief in this Court under 28 U.S.C. § 2254.

## II. LEGAL STANDARDS

### A. Standard Of Review Under The Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the Supreme Court of the United States "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Sec'y for Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme

Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id.*

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

## B. Standard For Ineffective Assistance Of Counsel

The Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[1] *Id.* at 687-88. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of

---

[1] In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the Supreme Court of the United States clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

### III. ANALYSIS

#### A. Grounds One and Two

In ground one, Petitioner asserts the trial court violated his constitutional rights by denying his motion for judgment of acquittal ("JOA") at the close of the State's case. (Doc. 1 at 5-16). In support of this ground, Petitioner argues that the evidence was insufficient as a matter of law to support his conviction. (*Id.* at 7). Similarly, in ground two, Petitioner contends the trial court violated his constitutional rights by denying his motion for JOA at the close of the defense's case. (*Id.* at 18-19). In addition to the purported insufficiency of the evidence, Petitioner maintains there was no showing of premeditation. (*Id.* at 19).

Petitioner argued on direct appeal that the trial court erred by denying his motions for JOA.[2] (Doc. 13-5 at 28-51). The Fifth DCA affirmed Petitioner's conviction, reasoning:

> We have carefully considered the evidence presented at trial in light of the standard applicable in circumstantial evidence cases. *See, e.g., McArthur v. State*, 351 So. 2d 972, 976 (Fla.1977). More specifically, we find that the eye witness testimony placing Dorivert at the scene of the murder in the narrow time frame during which the murder occurred, along with the blood and DNA evidence linking Dorivert to the murder scene were sufficient to rebut Dorivert's proffered hypothesis of innocence—that he was running errands and nowhere near the crime scene during or after the murder, so that someone else must have committed the crime.

*Dorivert v. State*, 59 So. 3d 1208, 1209 (Fla. 5th DCA 2011).

The standard of review in a federal habeas corpus proceeding when the claim is one of sufficiency of the evidence was articulated in *Jackson v. Virginia*, 443 U.S. 307 (1979). In *Jackson*, the Court concluded that when considering a claim of insufficient evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319; *Johnson v. Alabama*, 256 F.3d 1156, 1172 (11th Cir. 2001). Federal courts may not reweigh the evidence. *Jackson*, 443 U.S. at 319. It is the duty of the trier of fact to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the facts. *Id.*

> Pursuant to Florida law,
>
> Premeditation exists when there "is a fully formed conscious purpose to kill." *Wilson v. State*, 493 So. 2d 1019, 1021 (Fla. 1986). Premeditation may "be formed in a moment and need only exist 'for such time as will allow the accused to be conscious of the nature of the act he is about to commit and the probable result of that act.'" *DeAngelo v. State*, 616 So. 2d 440, 441 (Fla.1993) (quoting *Asay v. State*, 580 So. 2d 610, 612 (Fla.1991)). Premeditation can be inferred from circumstantial

---

[2] Petitioner raised ground one in the state court as a federal issue because he cited federal law. (Doc. 13-5 at 31). However, Petitioner did not rely on federal law in support of ground two. Consequently, ground two is arguably procedurally barred because it was not exhausted in the state court. In an abundance of caution, the Court will address the merits of ground two to the extent it was exhausted.

> evidence such as "the nature of the weapon used, . . . the manner in which the homicide was committed, and the nature and manner of the wounds inflicted." *Sochor v. State*, 619 So. 2d 285, 288 (Fla. 1993) (quoting *Larry v. State*, 104 So. 2d 352, 354 (Fla. 1958)).

*Boyd v. State*, 910 So. 2d 167, 181–82 (Fla. 2005), *as revised on denial of reh'g* (June 16, 2005).

In the instant case, the State presented evidence that Petitioner's wife, the victim, was last seen alive at her home at approximately 12:21 p.m., she failed to answer her door when her co-workers came to her house around 1:30 p.m., and her body was discovered around 3:30 p.m. after her employer contacted the police when she failed to come to work. (Doc. Nos. 13-2 at 124, 223; 13-3 at 8). Petitioner's neighbor testified that she saw Petitioner entering the neighborhood in which he and the victim lived between 12:30 p.m. and 1:00 p.m. on the date of the murder. (Doc. 13-2 at 177). The victim had been struck multiple times on the head and neck and had crawled from her bedroom to the master bathroom during the attack. In the hallway bathroom sink, law enforcement officials recovered a mixture of Petitioner's and the victim's DNA from what was described as blood tinted water, which presumptively tested positive for the presence of blood. (Doc. Nos. 13-3 at 37, 13-4 at 94, 98). Likewise, samples taken from Petitioner's belt, watch, and steering wheel contained Petitioner's and the victim's DNA and presumptively tested positive for blood. (Doc. 13-4 at 88, 91-93, 98-99).

Viewing the evidence in the light most favorable to the prosecution, the Court concludes that any rational trier of fact could have found that Petitioner murdered the victim with premeditation. Consequently, Petitioner has not demonstrated that the state court's denial of grounds one and two are contrary to, or an unreasonable application of, *Jackson*. Accordingly, these grounds are denied pursuant to § 2254(d).

### B.   Ground Three

Petitioner contends the trial court violated his constitutional rights by overruling his

objection to the admission of DNA evidence. (Doc. 1 at 20-22). In support of this ground, Petitioner argues that the DNA evidence should have been excluded because the State failed to establish the chain of custody of the clothing and other items from which the samples were taken. (*Id.*). Specifically, Petitioner complains that the individual who took his clothing from him when he was arrested did not testify. (*Id.* at 20, 22).

Absent exceptional circumstances, federal courts are precluded from granting habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-43 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). Specifically, 28 U.S.C. § 2254 provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B) (i) there is an absence of available State corrective process; or
> >
> > (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1). Thus, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991), *holding modified by Martinez v. Ryan*, 566 U.S. 1 (2012). In addition, a federal habeas court is precluded from considering claims that are not exhausted but would clearly be barred if returned to state court. *Id.* at 735 n.1 (stating that if the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims).

In order to satisfy the exhaustion requirement, a state petitioner must "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (citing *Picard*, 404 U.S. at 275-76) (internal quotation marks omitted). The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim. *Snowden v. Singletary*, 135 F.3d 732 (11th Cir. 1998).

Procedural default will be excused in two narrow circumstances. First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default. "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). "[E]xternal impediments include evidence that could not reasonably have been discovered in time to comply with the rule; interference by state officials that made compliance impossible; and ineffective assistance of counsel at a stage where the petitioner had a right to counsel." *Mize v. Hall*, 532 F.3d 1184, 1190 (11th Cir. 2008) (citing *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001)). To establish "prejudice" so as to warrant review of a procedurally defaulted claim, a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003) (citations omitted).

The second exception, known as the "fundamental miscarriage of justice," only occurs in an extraordinary case, in which a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must "show that it is more likely than not that no

reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In addition, "'[t]o be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513 U.S. at 324).

Petitioner did not raise this ground as a federal issue in the state court. *See* Doc. 13-5 at 52-53. Additionally, Petitioner did not cite any federal law in support of this ground. *See id.* Ground three was raised solely as an issue of state law. Thus, this ground was not exhausted and is procedurally barred from review by this Court absent an exception to the procedural default bar. Moreover, Petitioner has not demonstrated cause or prejudice to excuse his procedural default, and Petitioner has not established he is actually innocent. Accordingly, ground three is procedurally barred.

Alternatively, to the extent ground three was exhausted, it is denied pursuant to § 2254(d). The trial court overruled Petitioner's objection to the admission of the DNA evidence. (Doc. 13-4 at 66-72). Pursuant to Florida law,

> Relevant physical evidence can be admitted "unless there is an indication of probable tampering." *Murray v. State*, 838 So. 2d 1073, 1082 (Fla. 2002); *Peek v. State*, 395 So. 2d 492, 495 (Fla. 1980); *see also Terry v. State*, 668 So.2d 954, 959 n. 4 (Fla. 1996). Once a party produces evidence of tampering, "the proponent of the evidence is required to establish a proper chain of custody or submit other evidence that tampering did not occur." *Taplis v. State*, 703 So. 2d 453, 454 (Fla. 1997).

*Taylor v. State*, 855 So. 2d 1, 25 (Fla. 2003). "A bare allegation by a defendant that a chain of custody has been broken is not sufficient to render relevant physical evidence inadmissible." *Floyd v. State*, 850 So. 2d 383, 399 (Fla. 2002) (citing *Terry v. State*, 668 So. 2d 954, 959 n. 4 (Fla. 1996)).

A photograph showing Petitioner wearing the clothing and other items at the time of his arrest was admitted into evidence. (Doc. 13-3 at 265). Detective Bogen testified that he received

Petitioner's clothing and other items in a bag after Petitioner removed them. (*Id.* at 265, 270-71). Although the person who collected Petitioner's clothing did not testify, Petitioner failed to demonstrate there was any indication of tampering with his clothing, belt, watch, or other items taken from him after his arrest. Consequently, the trial court's admission of the DNA evidence was not improper. Accordingly, ground three is denied.

### C. Ground Four

Petitioner asserts the state court violated his constitutional rights by denying his Rule 3.853 motion for DNA testing. (Doc. 1 at 23-25). Specifically, Petitioner argues that the state court should have permitted him to test the victim's fingernails and the hand towel from the hallway bathroom for DNA. (*Id.*).

Petitioner did not raise this ground as a federal issue in the state court. *See* Doc. 13-7 at 52-58. Additionally, Petitioner did not cite any federal law in support of this ground. *See id.* Ground four was raised solely as an issue of state law. Thus, this ground was not exhausted and is procedurally barred from review by this Court absent an exception to the procedural default bar. Furthermore, Petitioner has not demonstrated cause or prejudice to excuse his procedural default and he has not established he is actually innocent. Accordingly, ground four is procedurally barred.

To the extent ground four raises a federal substantive due process claim, Petitioner cannot obtain relief because there is no post-conviction substantive due process right to obtain evidence for DNA testing. *See District Attorney's Office for the Third Judicial Circuit v. Osborne*, 557 U.S. 52, 72–73 (2009); *see also Skinner v. Switzer*, 562 U.S. 521 (2011). Likewise, to the extent Petitioner asserts a federal procedural due process violation resulting from the proceedings on his Rule 3.853 post-conviction motion, he is not entitled to relief. A prisoner's challenge to the process he received in a state post-conviction proceeding does not constitute a cognizable claim for habeas corpus relief. *See Carroll v. Sec'y, Dep't of Corr.*, 574 F.3d 1354, 1365 (11th Cir. 2009); *Quince*

*v. Crosby*, 360 F.3d 1259, 1262 (11th Cir. 2004). Finally, even assuming ground four was cognizable in this habeas action, Petitioner has not demonstrated that the state court's denial of this ground is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, ground four is denied.

### D. Ground Five

Petitioner asserts counsel rendered ineffective assistance by failing to object to statements made by the prosecutor in closing argument. (Doc. 1 at 32-34). In support of this ground, Petitioner references statements made by the prosecutor, which he maintains shifted the burden of proof and bolstered the credibility of Shirley Parker ("Parker"). (*Id.*). Specifically, Petitioner references statements made by the prosecutor arguing that some evidence was not refuted, that the State was sure there was no other suspect, there was no evidence to show a reasonable doubt, and that Parker remembered the time at which she saw Petitioner when she gave her statement to police on the night of the offense. (*Id.* at 33).

"To warrant reversal of a verdict[,] prosecutorial misconduct must be so pronounced and persistent that it permeates the entire atmosphere of the trial." *United States v. Thomas*, 8 F.3d 1552, 1561 (11th Cir. 1993) (citing *United States v. McLain*, 823 F.2d 1457, 1462 (11th Cir. 1987)). "Specifically, a prosecutor's remark during closing argument must be both improper and prejudicial to a substantial right of the defendant." *Id.* (citing *United States v. Bascaro*, 742 F.2d 1335, 1353 (11th Cir. 1984)). In determining whether the prosecutor's remarks warrant habeas relief, the proper inquiry is "whether the improper remarks were of sufficient magnitude to undermine confidence in the jury's decision. If a reviewing court is confident that, absent the improper remarks, the jury's decision would have been no different, the proceeding cannot be said to have been fundamentally unfair." *Tucker v. Kemp*, 802 F.2d 1293, 1296 (11th Cir. 1986).

Petitioner raised this ground in his Rule 3.850 motion. The state court denied relief pursuant to *Strickland*. (Doc. 13-8 at 67-68). The state court determined that the prosecutor's statements were permissible under Florida law. (*Id.*).

The state court's denial of this ground is not contrary to, or an unreasonable application of, *Strickland*. "[A]n attorney is allowed to argue reasonable inferences from the evidence and to argue credibility of witnesses or any other relevant issue so long as the argument is based on the evidence." *Miller v. State*, 926 So. 2d 1243, 1254-55 (Fla. 2006) (citing *Craig v. State*, 510 So. 2d 857, 865 (Fla. 1987)). Furthermore, under Florida law, the State may comment on a defendant's failure to produce evidence to refute an element of the offense "'when the defendant voluntarily assumes some burden of proof by asserting the defense of alibi, self defense, and defense of others, relying on facts that could be elicited only from a witness who is not equally available to the state.'" *Ramirez v. State*, 1 So. 3d 383, 385 (Fla. 4th DCA. 2009) (quoting *Gutierrez v. State*, 798 So. 2d 893 (Fla. 4th DCA 2001)).

In the instant case, the prosecutor's statements during closing argument were reasonable inferences that could be drawn from the evidence. Furthermore, the prosecutor's statements did not improperly shift the burden of proof because Petitioner presented an alibi defense at trial. Therefore, counsel was not deficient for failing to object to the prosecutor's statements. Moreover, the trial judge instructed the jury that nothing the attorneys said was evidence, only the evidence presented at trial could be considered in determining Petitioner's guilt, Petitioner was presumed innocent, and the State had the burden of proving Petitioner's guilt beyond a reasonable doubt. (Doc. 13-4 at 177, 227-28, 231, 233). Consequently, a reasonable probability does not exist that the outcome of the trial would have been different had counsel objected to the prosecutor's statements. As a result, trial counsel was not deficient for failing to object to them, and prejudice

did not result from counsel's failure to do so. Accordingly, ground five is denied pursuant to § 2254(d).

E.   **Ground Six**

Petitioner asserts counsel rendered ineffective assistance by failing to investigate and present exculpatory evidence. (Doc. 1 at 27-29). Specifically, Petitioner contends counsel failed to investigate certain items: the Taco Bell receipt, Race Track gas receipt, car rental business card, construction site from which he obtained plywood, hand towel from the hallway bathroom, the victim's fingernail clippings, and fingerprints at the entry point of the home, on the victim's purse, and on a plastic bag. (*Id.* at 28-29). According to Petitioner, this evidence would have established that he was not at the house when the victim was murdered. (*Id.*).

Petitioner raised this ground in his Rule 3.850 motion. The state court denied relief pursuant to *Strickland*. (Doc. 13-8 at 68-69). The state court noted that the evidence presented at trial established that the victim's DNA was found on Petitioner's belt, watch, and steering wheel and that an eyewitness saw Petitioner heading toward his home around the time of the murder. (*Id.*). The state court further noted that the possible existence of fingerprint evidence was purely speculation that could not warrant post-conviction relief. (*Id.*). The state court concluded that a reasonable probability did not exist that the outcome of the trial would have been different had counsel conducted additional investigation. (*Id.*).

The state court's denial of this ground is not contrary to, or an unreasonable application of, *Strickland*. From the evidence presented at trial, it does not appear that the backdoor, the victim's purse, or the plastic bag in the bedroom were processed for fingerprints. *See* Doc. Nos. 13-3 at 47, 105-06, 110, 138; 13-4 at 40. In addition, the hand towel and victim's fingernail clippings were not tested for DNA. Therefore, whether fingerprint evidence or DNA evidence from these items

existed is speculative and does not show deficient performance. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (holding that vague, conclusory, or speculative allegations cannot support claim of ineffective assistance of counsel). Moreover, as noted by the state court, the hand towel was located in the hallway bathroom and could have been used by visitors to the house such that it could have contained DNA not belonging to the perpetrator. Additionally, the victim was a certified nurse which would have made it possible for DNA from an unknown person to be under her fingernails. (Doc. 13-6 at 45).

With respect to purported receipts and business card from places Petitioner said he went the day of the murder, Petitioner has not provided any such evidence. Consequently, these allegations are likewise speculative. Moreover, Petitioner told police he went to Taco Bell and a gas station in the timeframe before the victim was murdered. (Doc. 13-3 at 258-59). Additionally, the defense called a witness who testified that Petitioner was with him from 10 a.m. until 4 p.m. on the day of the murder. (Doc. 13-4 at 156). Counsel cannot be deemed deficient, therefore, for failing to investigate the receipts.

Finally, as noted previously, the victim's DNA was found on Petitioner's belt, watch, and steering wheel and Petitioner's DNA was found, along with the victim's DNA, in the blood tinted water from the hallway bathroom sink. Moreover, Petitioner was seen heading toward the home shared by him and the victim during the timeframe in which the victim was murdered. Consequently, a reasonable probability does not exist that the outcome of the trial would have been different had counsel conducted additional investigation. Accordingly, ground six is denied pursuant to § 2254(d).

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV. CERTIFICATE OF APPEALABILITY

This Court should grant an application for certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Sec'y Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009). When a district court dismisses a federal habeas petition on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue only when a petitioner demonstrates "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*; *Lamarca*, 568 F.3d at 934. However, a prisoner need not show that the appeal will succeed. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Petitioner has not demonstrated that reasonable jurists would find the Court's assessment of the constitutional claims debatable or wrong. Moreover, Petitioner cannot show that jurists of reason would find this Court's procedural rulings debatable. Petitioner has failed to make a substantial showing of the denial of a constitutional right. Thus, the Court will deny Petitioner a certificate of appealability.

Accordingly, it is hereby **ORDERED and ADJUDGED:**

1. The Petition (Doc. 1) is **DENIED**, and this case is **DISMISSED with prejudice.**

2. Petitioner is **DENIED** a Certificate of Appealability.

3. The Clerk of the Court shall enter judgment accordingly and is directed to close this

case.

**DONE** and **ORDERED** in Orlando, Florida on August 1~~, 2017.~~ Sept 1, 2017.

JOHN ANTOON II
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party